Gaston, Judge,
 

 after stating the case as above set forth, proceeded. — Upon the argument it was urged by the coun
 
 *91
 
 sel for the plaintiff, that his right to recover, unless prevented by some of the bars set up because of lapse of time, was established by the decision made in the suit referred to in the pleading, (vide
 
 Speight
 
 v.
 
 Gatlin,
 
 2 Dev. Eq. Cas. 5.) That decision is regarded by us as conclusively settling the construction of Joseph Speight’s will. He did not die intestate, with respect to the remainder or residuary interest in the property bequeathed to his widow for life, and that property upon the death of the widow was divisible between the representatives of Francis and Henry Speight, the two residuary legatees, only, and not between them and also the representatives of their deceased sisters Susanna Darden and Catharine Dunn.
 

 As James Gatlin was the administrator of Henry Speight-, and stood in the express and direct relation of trustee to the next of kin of Henry Speight, they had a right to call upon him and his representatives for a distribution of the funds of Henry Speight, which had come, or ought to have come into his hands, as their trustee, more especially as, at the very time when he parted with a portion of these funds improperly, they had remonstrated against the act which he was committing, and cautioned him against its consequences. But the defendant’s intestate was not administrator of Francis Speight, and therefore did not stand in the same relation to his next of kin which he occupied with respect to the next of kin of Henry Speight. On what ground, then, is it, that he became personally responsible to the administrator
 
 de bonis non
 
 of Francis Speight for the share in this property which had vested in the said Francis ? The bill claims, that being tenant in common with the administrator thereafter to be appointed of Francis Speight, or with the next of kin of the said Francis, and having the whole of the common fund in his hands, or at all events in his power, he was trustee for such administrator, or next of kin, as to his or their share of it, and responsible as for a violation of trust in having neglected to preserve it. We do not assent to these positions. The possession of one tenant in common, as such, is, so long as it continues, the possession of all the tenants in common, because tenants in common, although
 
 *92
 
 they have a distinct interest, have but one possession. The possession of a trustee is said to be the possession of the
 
 cestu% clue trust,
 
 because it is the duty of the trustee to take care of the thing of which he is the legal owner, for the benefit of his
 
 cestui que trust,
 
 and the possession, while it remains with the legal owner, will not be presumed inconsistent either with his obligations, or with the rights of his
 
 cestui que trusts.
 
 But a tenant in common, as such, is not a trustee for his companion. He is under no obligation to ^’s companion to take or to keep possession of the undivided property; he is not charged with the duty of protecting ^ie common property ; while he holds it he is liable for the profits derived from his companion’s share, or for an actual injury done to it; when he parts with the undivided property to another, as there is an end to his possession, there is an end, also, with him, to the liabilities arising from that possession. Constructive or implied trusts between tenants in common may be raised by Courts of .
 
 J J
 
 Equity, because of the relation caused by a community Possession; just as similar trusts are raised between persons whom any other cause brings together, into a re'ati°n inferring confidence. If one of several tenants in common should buy in an outstanding title effecting the common property, equity will declare him to have purchased for the benefit of the others. So if one of several co-sureties procures an indemnity from the principal, it shall enure to the protection of all. And so, if a particular tenant renews a [renewable lease in his own name, the renewal shall operate for the benefit of those in remainder.^ And so if a fraud in any matter of contract be committed by one party upon another, equity considers him who has obtained the unfair advantage, as bound in conscience, not to avail himself of it, and to
 
 that extent
 
 treats him as a trustee for the other. If any improper advantage had been taken by Gatlin, by reason of his possession of the common fund, or if the abandonment of it in whole or part had been made with a fraudulent intent, there might be room for then converting him into a trustee, as to those injured or attempted to be injured by his unfair practices. But he was not the legal owner, curator, protector,
 
 *93
 
 of the share of the plaintiff, or of those whom the plaintiff represents, and is not, therefore, responsible to the plaintiff as his trustee. The division made of the common fund was erroneous, and it was just as competent for the administrator of Francis, as for the administrator of Henry Speight, to take the proper steps to correct the error. Regularly, they should have acted in concurrence with each other. Neither has taken any measures for that purpose. The proceeding here is not to correct the mistake, not to have a new division of the fund, but to throw the whole loss upon one of the tenants in common, for the relief of the other. It is possible, that the property may now be removed to parts unknown, or that the possessors of it may be insolvent, or that it may be too late for those injured to obtain any redress; and if so, where there is no fraud, and no breach of any peculiar obligation imposed upon one of the parties, equality is equity.
 

 
 *92
 
 Atenantin possession thereby1 be come a hisfellow
 

 But con-atractiva trusts may arise be-by'reason11 of the con-ateTby016" their rek-tlon'
 

 
 *93
 
 Anunqua- ^ an exe- ^ life, vests *?tle of mainder, ^hen there are no paid^nor6 ^ny trusts
 

 Although the bill places the claim to relief upon the ground which has been stated and considered, we have deemed it incumbent on us to examine whether the facts charged and ascertained, presented any other ground upon which the plaintiff is entitled to relief. The property had been bequeathed for life to the widow of Joseph Speight, and the ulterior interest therein passed under the residuary clause to the two sons, the executors. Had the will been silent', the law constituted the residuum of the testator’s estate the primary fund for paying 'debts and funeral charges, and this ulterior interest was, a part of that residue. The testator, however, expressly charged the residue of his estate with this burthen, and directed it to be sold for that purpose. It was competent, then, for the executors, had other persons been the residuary legatees, when assenting to the specific bequest for life, to have restricted their assent to that only. If there were debts remaining undischarged, which rendered the aid of this ulterior interest necessary for their satisfaction, I am not convinced, that an unexplained assent to the bequest for life, would have been in such a case construed into an assent also to the ulterior disposition. But-where no debts appear; where there is no purpose for which the execu
 
 *94
 
 tors could rightfully ask for the possession of the property after the death of the legatee for life, such an assent would, I think, pass the estate in the property wholly away from the executors, and vest it in those in remainder, as well as in the tenant for life. The case is quite as strong, or perhaps stronger, when the executors are themselves the ulterior legatees. The property being in equity theirs, charged only with the obligation of paying the debts of their testator, it will readily be presumed, when no debts appear, that they assent to the bequest, and make it legally theirs. We think, therefore, the plaintiff was right when he charged by his bill, that the defendant’s intestate took possession, not as administrator
 
 de bonis non
 
 of Joseph Speight, the original testator, but as the administrator of Henry Speight, one of the legatees, to whom it had been bequeathed, subject to the life estate of the widow. The case does not come, we think, within the principles of
 
 Dunwoodie
 
 v.
 
 Carrington,
 
 2 Law Rep. 469, where the executor has a trust to perform
 
 out of the thing bequeathed,
 
 and after the death of the first taker. The payment of the funeral charges and debts of the testator, was not to await here until after the death of the widow, and then to be made out of the things bequeathed; but the ulterior interest in these things, such as it was at the testator’s death, was chargeable with these expenses and debts, and they were payable immediately. We are obliged to infer from all the facts charged, that this ulterior interest was not needed for any such purpose, and that when the delivery was made to the widow, it operated to vest the complete legal interest in the things bequeathed. The case comes within the principles of
 
 Jones
 
 v.
 
 Zollicoffer,
 
 N. C. Term Reps. 214;
 
 Ingram
 
 v.
 
 Terry,
 
 2 Hawks, 122;
 
 Alston
 
 v.
 
 Foster,
 
 1 Dev. Eq. Cases, 337, and
 
 Burnett
 
 v.
 
 Roberts,
 
 4 Dev. Rep. 87. We regard it as settled in this it, • country, that when slaves are given, or an interest m s^aves bequeathed as a residue, or part of a residue, a sale is not to be had, unless it be necessary for the payment of ^e^ts> or f°r accomplishing the purposes of the testator.
 
 Smith
 
 and
 
 Wife
 
 v.
 
 Barham,
 
 2 Dev. Eq. Cases, 420. If these views be correct, it is unnecessary to examine
 
 *95
 
 the bars set up against the present claim, because of the lapse of time. Should it be possible, however, for the plaintiff to substantiate a claim against the intestate of the ■defendant, analogous to that which a tenant in common can prefer against his companion for a destruction of the , . ■thing, we see no reason wherefore it must not be brought within the time limited for such actions. Fifteen years elapsed in this case since the wrong complained of, and twelve years since the first administration taken .out on ■Francis Speight’s estate, before any demand shown or suit brought, and three years with us is a bar to an action of trover. If James Gatlin did not stand in the relation of trustee to the plaintiff or those whom he represents, but his error gives the plaintiff nevertheless a claim to compensation, makes him either a legal or equitable creditor of the deceased, I can see no reason why the bar of the act of 1715 does not, apply. It is not confined to any particular suits, or to suits in any Court. But it operates in all where the claimant comes as a creditor, and such claim and creditor existed at the death of .the person whose estate is pursued. If the plaintiff laboured under the notion, that being'a defendant to the former bill was a suing within the ordinary act of limitations, or a making of claim within the meaning of the act of 1715, it was unquestionably a mistake, and it would be too unreasonable to allow him to derive benefit from his mistakes, however innocent, while he seeks to render others liable to him for mistakes equally honest.
 

 
 *94
 
 formed, upon the expiration of the life estate, and in such a case if the executor is entitled in remainder, he holds as legatee, and not as executor.
 

 The cases
 
 Zofucojer'
 
 N. c. Term
 
 Ingram v. Terry,
 
 2
 
 in-Alston
 
 v.
 
 Foster,
 
 1 Dev. Eq. Ca.337;
 
 ^Barham 3
 
 Id. 420,’
 
 ToRoberts*
 
 4 Dev. Rep.
 
 9¿
 
 approv'
 

 
 *95
 
 a claim in against a joint own-tel^ndo^" gous to one detraction of it, is bar-statute of limitation, ferrad within three yeaIS'
 

 And the ofadformer bijt parties ^oth will not repel it-
 

 It is the opinion of the Court, that the bill must be dismissed with costs.
 

 Pee Cueiam.. Bill dismissed.