W. A. GENTRY ET AL. v. C. C. GENTRY.

(Filed 22 January, 1924.)

**1. Evidence—Nonsuit.**

Upon a motion to nonsuit, the evidence is considered in the light most favorable to the plaintiff.

**2. Tenants in Common—Adverse Possession—Outstanding Title—Trusts.**

Where the original enterer upon State's lands has acquired the right to a grant of land which has not been issued to him, and after his death his son remains in possession and continuing to claim under him, obtains the grant in his own name, pays the taxes, etc.: *Held*, his possession is that of a tenant in common with the other heirs at law of the deceased ancestor under whom all claim, and the possession under the outstanding title he has thus obtained cannot operate for his exclusive benefit.

**3. Same—Limitation of Actions—Statutes—Possession—Ouster.**

Where one tenant in common in possession has obtained for himself the outstanding title to the *locus in quo*, equity will declare him to have purchased for the benefit of the others, to be held in trust for them, and the ten-year statute applying to his possession, C. S., 445, in such instances, will not begin to run in his favor against his cotenants until some act of ouster on his part sufficient to put them to their action.

**4. Same—Evidence—Questions for Jury.**

Where a tenant in common in possession has declared that he was holding the possession for the benefit of all, the evidence is sufficient to take the case to the jury.

**5. Same—Deeds and Conveyances—Sale—Proceeds.**

Where a tenant in common in possession has acquired the outstanding title and has sold the land, the principle upon which equity impresses a trust on the land for the benefit of the cotenants is applicable to the proceeds of the sale so made.

CIVIL ACTION, tried by *Lane, J.,* at April Term, 1923, of CHEROKEE. Nonsuit, and appeal by plaintiffs.

The plaintiffs alleged that in 1854 James W. Blackwell obtained a certificate of survey on Entry No. 4024 for land on Tellico River, known as the Freeman place, and gave to the State certain bonds payable in one, two, three, and four years, with W. S. Gentry as surety; that Gentry paid the bonds and under the Cherokee Land Law then in force became entitled to a grant for said land; that he acquired a deed for the land from Blackwell; that about the beginning of the war he took charge of the land, used it and built a cabin on it, and claimed it continuously until his death in 1865 or 1866; that after his death his widow, and the defendant for her, listed the land for taxation as the property of Gentry's heirs and paid the taxes until her death, after which the defendant listed the land in the same way until 1900, when

he procured a grant for the land from the Secretary of State. They allege that the defendant never claimed the land until he received his grant and that W. S. Gentry's title matured through possession before 1900; that about that time the defendant fraudulently procured the register of deeds of Cherokee County to issue a certificate that Blackwell and others had paid for the lands covered by said entry, knowing that W. S. Gentry had made such payment, and moreover fraudulently wrote out an assignment of the entry to himself and antedated it 16 February, 1886; that he could not take a grant in his own name while holding the land for the estate; and that he contracted to sell it in 1909, and under a decree for specific performance executed a deed to the purchaser in 1916.

The plaintiffs ask that the defendant be declared a trustee for them and required to pay to each one-seventh of the purchase money.

The defendant denied the material allegations of the complaint and alleged that his grant was issued on 7 February, 1900, upon assignment of Blackwell's certificate and recorded on 20 February, 1900; and that in 1909 he contracted to sell the land to D. W. Swan, whose assignee brought suit for specific performance on account of a dispute as to the number of acres, and made a conveyance to the purchaser on 25 July, 1916. He also pleaded the ten-year and the twenty-year statute of limitations. At the close of the plaintiffs' evidence the action was dismissed as in case of nonsuit.

*John H. Dillard and Thomas J. Hill for plaintiffs.*
*M. W. Bell and J. N. Moody for defendant.*

ADAMS, J. If accepted in the light most favorable to the plaintiffs the evidence shows the following facts: In 1854 James W. Blackwell entered a tract of vacant land on Tellico River in Cherokee County, known as the Freeman land, and in the same year, (one witness said in 1864 or 1865) without obtaining a grant, executed his deed therefor to W. S. Gentry, the father of the plaintiffs and the defendant. Near the beginning of the Civil War W. S. Gentry built a cabin on the land and put a tenant in it, who remained there ranging stock until the end of the war, and exercised other acts of dominion over the land until his death. He died in 1864, and his widow and the defendant then had charge of the land until her death which occurred in 1885 or 1887, listing it for taxation and annually paying the taxes thereon. The defendant, repeatedly admitting that the land was his father's, said that the deed from Blackwell had been misplaced, lost or burnt and that he was going to get a release or quit-claim from the grantor, sell the land, and distribute the proceeds when collected among the heirs at law.

At the date of his contract with Swan in 1909, and even after he had been sued for specific performance, he recognized their interest in the land and in the proceeds, if a sale should be effected. In 1900 he obtained a grant for the land upon a purported assignment of Blackwell's certificate of survey, the validity of which the plaintiffs denied. On 25 July, 1916, the defendant in consideration of $1,962.49 conveyed the land to Swan's assignee, and in 1922 the present suit was commenced.

This Court has recently emphasized the principle that the plaintiff's right to impress a trust upon the proceeds arising from the defendant's sale of the land is dependent upon the question of their right to impress such trust upon the title acquired by the defendant under his grant. If he held such title to the land in trust he likewise held in trust the proceeds arising from the sale. *Little v. Bank of Wadesboro, ante,* 1. It becomes necessary, therefore, to determine the legal relation of the parties at the time the grant was issued. Whether W. S. Gentry and his heirs acquired title by possession under the Blackwell deed as color, we need not inquire, because the evidence tends to show that after Gentry's death his heirs (including the defendant, of course) claimed under him, and while asserting such claim they were precluded from denying his title. *Collins v. Swanson,* 121 N. C., 67; *Alexander v. Gibbon,* 118 N. C., 796; *Christenbury v. King,* 85 N. C., 230; *Johnson v. Watts,* 46 N. C., 228; *Thomas v. Kelly, ibid.,* 375. It appears then that the parties, as heirs of W. S. Gentry, claimed to be tenants in common of the land when the defendant obtained his grant. Did the grant change this relation?

Subject to certain exceptions there is a general rule that confidence characterizes the relation of cotenancy to such extent that while the relation exists it precludes one of the cotenants from purchasing, for his exclusive benefit, an adverse or outstanding claim of title. *Chief Justice Pearson* stated the principle in this language: "There is a fellowship between tenants in common. The law assumes they will be true to each other; the possession of one is the possession of all, and one is supposed to protect the rights of his cotenants and is not tolerated in taking an adversary position unless he acts in such manner as to expose himself to an action by his fellows on the ground of a breach of fealty; that is an actual ouster." *Day v. Howard,* 73 N. C., 4. "If one of several tenants in common should buy in an outstanding title affecting the common property, equity will declare him to have purchased for the benefit of the others." *Saunders v. Gatlin,* 21 N. C., 92. "The general rule is well settled that one cotenant cannot purchase an outstanding title or encumbrance, affecting the common estate, for his own exclusive benefit, and assert such right against his cotenants." *Jackson*

v. *Baird,* 148 N. C., 29. See, also, *Woodlief v. Woodlief,* 136 N. C., 138; *McLawhorn v. Harris,* 156 N. C., 111; *Smith v. Smith,* 150 N. C., 81; *Troxler v. Gant,* 173 N. C., 425; *Everhart v. Adderton,* 175 N. C., 403, 406; *Ruark v. Harper,* 178 N. C., 252; Note, 19 L. R. A., N. S. 591; Note, 37 L. R. A., N. S. 831.

The evidence, if true, shows the defendant's avowed purpose to hold the title obtained under his grant for the benefit of all the heirs and to pay to each his proportionate part of the proceeds derived from the sale to Swan's assignee, and under these circumstances we must hold that there was evidence from which the jury might have inferred that the relation of cotenancy existed, and that it was admitted by the defendant as late as 1916. If this contention is sustained the cause is not barred by the statute of limitations. We have held that an action to have a party declared a trustee is barred by the lapse, not of three, but of ten years. C. S., 445; *Sexton v. Farrington,* 185 N. C., 339; *Little v. Bank, supra.*

As we are required to do in an appeal from a judgment dismissing the action as in case of nonsuit, we have treated the appeal as if the circumstances relied on by the plaintiffs were fully established. When the facts are developed upon the trial the jury may reject the plaintiffs' contention entirely but we think the evidence as disclosed in the present record should have been submitted to the jury, and to this end the cause is remanded to the lower court.

Error.